IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

CURTIS SPIRES, a/k/a,
Jimmie Canupp, Jr.,

    Plaintiff,

v.

JOHN PAUL; KIM THOMAS;
LARRY BREWTON; TAMMIE
THOMAS; FERRY BRADDY;
DOUG WILLIAMS; Dr. DEAN
BROOME; and DEBORAH M. KING,

    Defendants.

CIVIL ACTION NO.: CV611-045

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at Georgia State Prison in Reidsville, Georgia, filed a cause of action pursuant to 42 U.S.C. § 1983.[1] Defendants filed a Motion to Dismiss, to which Plaintiff responded. Plaintiff filed a Reply. Defendants filed a Surreply. For the reasons which follow, Defendants' Motion should be **GRANTED** in part and **DENIED** in part.

---

[1] Plaintiff filed a pleading entitled "Motion to Amend" on September 6, 2011. A review of this pleading reveals that this pleading is Plaintiff's response to the undersigned's Order dated August 31, 2011, granting his Motion to Amend and allowing Plaintiff a period of 14 days in which to file any desired amendment. Plaintiff sets forth no new allegations in this pleading. Therefore, the undersigned **DENIES** Plaintiff's "Motion to Amend"; however, the undersigned has considered the contents of this pleading in reaching the conclusions contained herein.

## STATEMENT OF THE CASE

Plaintiff asserts that in July 2010, he was housed with another inmate, Deandra Lee ("Lee"). Plaintiff claims he told Defendant Brewton several times in August that he feared that Lee would harm him. Plaintiff asserts he was punched by Lee on August 12, 2010. Plaintiff states Defendant Kim Thomas saw Plaintiff's black eyes from the punches and was told by Defendant Kim Thomas to fight back. Plaintiff claims that on August 18, 2010, he told Defendants Kim Thomas and Braddy that Lee had been denying Plaintiff his meals and sexually and physically assaulting Plaintiff. Plaintiff states he was moved to protective custody later that day.

Plaintiff states he was later given a disciplinary report for marijuana possession and was moved to an isolation cell. Plaintiff states Defendant Tammie Thomas told Plaintiff that he would be in isolation with no water. Plaintiff states he had no running water in his isolation cell and his repeated requests for running water were ignored. He claims he was forced to drink toilet water for several days. Plaintiff asserts he notified Defendant Paul that he had no water. Plaintiff states that Defendant Paul told him that was too bad and that Plaintiff should tell the cell block officer that there was no water in his cell so a work order could be done.

Plaintiff asserts he suffered from vomiting and diarrhea from drinking his toilet water. He claims he was moved back into a dorm with Lee on October 18, 2010. Plaintiff claims Lee instantly attacked Plaintiff, and Plaintiff suffered head injuries and a broken finger. Plaintiff states he contacted Defendant Williams concerning Lee's attacks on Plaintiff, but never received a response. Plaintiff states his broken bones from the attack were treated 30 days after the fact.

AO 72A
(Rev. 8/82)

Defendants contend that Plaintiff's claims against them in their official capacities should be dismissed. Defendants also contend that Plaintiff fails to state viable Eighth Amendment claims against them. Defendants further contend that they are entitled to qualified immunity.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This "pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" does not suffice. Id. (internal punctuation and citation omitted).

In order to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal punctuation and citation omitted). While a court must accept all factual allegations in a complaint as true, this tenet "is

3

inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. Id.

## DISCUSSION AND CITATION TO AUTHORITY

### I. Official Capacity Claims

Defendants assert that Plaintiff's monetary damages claims against them in their official capacities are barred by the Eleventh Amendment.[2] A lawsuit against prison officials in their official capacities is no different from a suit against the government itself; such defendants are immune. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989). As Plaintiff's monetary damages claims against Defendants in their official capacities would be claims against the State of Georgia, this portion of Defendants' Motion should be **granted**.

### II. Deliberate Indifference to Safety and/or Health

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety and health of prison inmates. "'To show a violation of [his] Eighth Amendment rights, [a p]laintiff must produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation.'" Smith v. Reg'l Dir. of Fla. Dep't of Corr., 368 F. App'x 9, 14 (11th Cir. 2010) (quoting Purcell ex rel. Estate of Morgan v. Toombs Co., Ga., 400 F.3d 1313, 1319 (11th Cir. 2005)). "To be deliberately indifferent a prison official must know of and disregard 'an excessive risk to inmate health or safety; the official must both be aware

---

[2] The undersigned notes that Defendants have voluntarily dismissed this portion of their Motion, given Plaintiff's clarification that he does not wish to sustain a cause of action against Defendants in their official capacities. However, the undersigned addressed this portion of Defendants' Motion out of an abundance of caution and for clarity purposes.

of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" Id. (quoting Purcell, 400 F.3d at 1319-20). Whether a substantial risk of serious harm exists so that the Eighth Amendment might be violated involves a legal rule that takes form through its application to facts. All disputed facts are resolved in accord with the plaintiff's view of the facts. Purcell, 400 F.3d at 1320. However, "simple negligence is not actionable under § 1983, and a plaintiff must allege a conscious or callous indifference to a prisoner's rights." Smith, 368 F. App'x at 14.

### A. Defendant Brewton

Defendants assert that Plaintiff's vague statement that he warned Defendant Brewton that he feared for his life was not sufficient to place Defendant Brewton on notice of the specific risk Plaintiff stated he faced. Rather, Defendants assert, Plaintiff's statement may have made Defendant Brewton aware of inmate Lee's "generally problematic nature[,]" but this does not rise to the level of an Eighth Amendment violation. (Doc. No. 28-1, p. 11). Defendants aver that Defendant Brewton cannot be liable for inmate Lee's alleged second attack on Plaintiff. Defendants contend that, even if Defendant Brewton were aware that inmate Lee attacked another inmate less than two (2) hours prior to his second attack on Plaintiff, it does not show that Defendant Brewton had knowledge of a threat to Plaintiff's safety.

Plaintiff contends that he informed Defendant Brewton on several occasions—both verbally and in writing—that he was in fear for his life because of inmate Lee, and Defendant Brewton told Plaintiff not to worry about it. Plaintiff also contends that Defendant Brewton did nothing about Plaintiff's fears.

Based on the pleadings before the Court, it appears that Plaintiff's claims against Defendant Brewton should survive Defendants' Motion to Dismiss. It is reasonably plausible that Plaintiff told Defendant Brewton on several occasions that inmate Lee posed a substantial risk to Plaintiff's safety and that Defendant Brewton ignored Plaintiff's fears. Accordingly, this portion of Defendants' Motion should be **denied**.

### B. Defendant Kim Thomas

Defendants assert that Plaintiff allegedly had two (2) occasions to be in contact with Defendant Kim Thomas—first, after inmate Lee allegedly assaulted Plaintiff on August 12, 2010, and, second, six days later when Plaintiff said he was on a hunger strike so he could be removed from the cell he shared with inmate Lee. Defendants allege that these incidents are insufficient bases of liability for Defendant Kim Thomas. In fact, Defendants assert, Defendant Kim Thomas alerted Defendants Tammie Thomas and Braddy of Plaintiff's difficulties, and he was removed from a cell with inmate Lee.

Plaintiff responds that he wrote a witness statement, which he gave to Officer Hall around 5:30 a.m., that he feared for his life because of inmate Lee's actions and that inmate Lee punched him in the face around 2:00 p.m. that same day. Plaintiff asserts that Defendant Kim Thomas saw Plaintiff with two black eyes and asked what was wrong with his eyes. After Plaintiff told her that inmate Lee had assaulted him, Defendant Kim Thomas told Plaintiff to fight back and left him "to continue to be assaulted again, and again." (Doc. No. 33, p. 5).

Plaintiff has not presented any facts which reveal that Defendant Kim Thomas was aware of a threat to his safety before inmate Lee attacked him the first time. At most, Plaintiff has shown that *another* officer was made aware of a possible threat to

AO 72A
(Rev. 8/82)

Plaintiff's safety, which is an insufficient basis to permit Plaintiff's claims against Defendant Kim Thomas to proceed. This portion of Defendants' Motion should be **granted**. Plaintiff's claims against Defendant Kim Thomas should be **dismissed**.

### C. Defendant Braddy

Defendants aver that Defendant Braddy was informed by Defendant Kim Thomas that Plaintiff had a problem with inmate Lee, and Defendant Braddy worked to have Plaintiff moved to a different cell. Defendants also aver that Defendant Braddy told Plaintiff with whom to speak to get drinking water in his cell after Plaintiff told him he had no water. Defendants further aver that Defendant Braddy took photographs of Plaintiff after inmate Lee attacked him a second time. Defendants contend that Defendant Braddy's actions do not amount to deliberate indifference to Plaintiff's safety or health.

The only assertion Plaintiff makes regarding Defendant Braddy is that he informed Defendant Braddy that inmate Lee attacked him, and Plaintiff was moved to an isolation cell later that same day. Plaintiff's allegations against Defendant Braddy do not reveal the plausibility that Defendant Braddy disregarded a known risk to Plaintiff's safety, and therefore, do not show Defendant Braddy was deliberately indifferent to Plaintiff's safety. Likewise, Plaintiff has not shown that Defendant Braddy was deliberately indifferent to his health by asserting that Defendant Braddy directed him to whom to speak regarding the lack of drinking water in the isolation cell. This portion of Defendants' Motion should be **granted** and Plaintiff's claims against Defendant Braddy should be **dismissed**.

AO 72A
(Rev. 8/82)

### D. Defendant Tammie Thomas

Defendants allege that Defendant Tammie Thomas merely escorted Plaintiff to isolation after he was found guilty of possessing marijuana. Defendants assert that Defendant Tammie Thomas did not assign Plaintiff to a cell which had no water, and, even if she knew there was no drinking water in the cell, it does not follow that she knew Plaintiff would be without water for a long period of time.

Plaintiff contends that Defendant Tammie Thomas knew that he was going to be without water to drink in the isolation cell, but she did nothing to correct the situation. Plaintiff also contends that, because he did not have proper drinking water, he contracted dysentery. Plaintiff asserts that Defendant Tammie Thomas' comment "Enjoy your stay in isolation" (Doc. No. 33, p. 8), without water is evidence that she knew Plaintiff's health and safety were at risk.

Contrary to Plaintiff's assertions, even if Defendant Tammie Thomas knew that the isolation cell in which Plaintiff was housed did not have water, her actions do not establish that she was deliberately indifferent to Plaintiff's health. There is nothing in the pleadings which reveals that Defendant Tammie Thomas was aware that Plaintiff faced a substantial risk to his health or that Defendant Tammie Thomas disregarded this risk. Thus, this portion of Defendants' Motion should be **granted** and Plaintiff's claims against Defendant Tammie Thomas should be **dismissed**.

### E. Defendant Paul

Defendants contend that Plaintiff informed Defendant Paul that his cell did not have drinking water, and that Defendant Paul's response to Plaintiff was written "with a degree of snark[.]" (Doc. No. 28-1, p. 16). However, Defendants assert, Defendant

AO 72A
(Rev. 8/82)

Paul directed Plaintiff to tell the cell block officer that his sink did not work so that a work order could be submitted. Defendants asserts that this does not amount to deliberate indifference.

Plaintiff avers that he told Officer Robinson, the floor officer, that he did not have any water in his cell, and Officer Robinson told him a work order would be done. Plaintiff asserts that he then told Defendant Paul that he did not have any drinking water in his cell, and his remark to tell the floor officer shows Defendant Paul's knowledge and failure to protect him.

Plaintiff's assertions against Defendant Paul arguably indicate that Defendant Paul knew of a potential and substantial risk to Plaintiff's health. However, Plaintiff's assertions also show that Defendant Paul told Plaintiff he should inform the floor officer of the lack of drinking water. Defendant Paul's actions show that he did not disregard any alleged risk to Plaintiff's health, even if, as Defendants admit, Defendant Paul's written response to Plaintiff was a little caustic. As a matter of law, this portion of Defendants' Motion should be **granted**. Plaintiff's claims against Defendant Paul should be **dismissed**.

### F. Defendant Williams

Defendants assert that Defendant Williams had no knowledge of any previous difficulties that Plaintiff may have had with inmate Lee, and that Defendant Williams did not know Plaintiff had any problem with inmate Lee until after the second attack. Defendants allege that the most Plaintiff has alleged is that Defendant Williams may have had knowledge of inmate Lee's "'generally problematic nature[,]'" but this is not a

sufficient basis for a deliberate indifference claim. (Doc. No. 28-1, p. 17) (quoting Carter v. Galloway, 352 F.3d 1349, 1349 (11th Cir. 2003)).

Plaintiff responds that Defendant Williams' job is to maintain all aspects of security at the prison. Plaintiff asserts that inmate Lee attacked another inmate, and before that attack, Plaintiff had told "prison officials" that he feared for his life because of inmate Lee. Plaintiff contends that Defendant Williams was put on notice and failed to respond or act reasonably in light of this knowledge.[3]

Plaintiff's allegations against Defendant Williams are sufficient to survive a motion to dismiss. Plaintiff has shown that it is at least plausible that Defendant Williams was put on notice that inmate Lee posed a risk to Plaintiff's safety and did nothing to correct the situation or otherwise act in a reasonable manner. This portion of Defendants' Motion should be **denied**.

## III. Deliberate Indifference to Plaintiff's Serious Medical Needs

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon a prison official to take reasonable measures to guarantee the safety of inmates. The standard for cruel and unusual punishment, embodied in the principles expressed in Estelle v. Gamble, 429 U.S. 97, 104 (1976), is whether a prison official exhibits a deliberate indifference to the serious medical needs of an inmate. Farmer v. Brennan, 511 U.S. 825, 828 (1994). However, "not every claim by a prisoner that he has not received adequate medical treatment states a violation of

---

[3] Plaintiff states in his Response to Defendants' Motion to Dismiss that Defendants were motivated to act against him as retaliation for his filing grievances and for not snitching on the person who gave him the marijuana he had. The undersigned did not permit service of Plaintiff's Complaint, as amended, based on retaliation claims and will not permit Plaintiff to make a new assertion by way of a Response to Defendants' Motion. For this same reason, the undersigned will not permit Plaintiff to proceed with his claims that Defendant Williams failed to train officers properly and that the prison was understaffed. (Doc. No. 33, pp. 19-21).

10

the Eighth Amendment." Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Estelle, 429 U.S. at 105). Rather, "an inmate must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994).

In order to prove a deliberate indifference claim, a prisoner must overcome three obstacles. The prisoner must: 1) "satisfy the objective component by showing that [he] had a serious medical need"; 2) "satisfy the subjective component by showing that the prison official acted with deliberate indifference to [his] serious medical need"; and 3) "show that the injury was caused by the defendant's wrongful conduct." Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007). A medical need is serious if it "'has been diagnosed by a physician as *mandating* treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" Id. (quoting Hill, 40 F.3d at 1187) (emphasis supplied). As for the subjective component, the Eleventh Circuit has consistently required that "a defendant know of and disregard an excessive risk to an inmate's health and safety." Haney v. City of Cumming, 69 F.3d 1098, 1102 (11th Cir. 1995). Under the subjective prong, an inmate "must prove three things: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." Goebert, 510 F.3d at 1327. In instances where a deliberate indifference claim turns on a delay in treatment rather than the type of medical care received, the factors considered are: "(1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay." Id.

AO 72A
(Rev. 8/82)

Defendants state that Plaintiff makes no factual allegations against Defendants Broome or King. Rather, Defendants assert, Plaintiff generally references the medical department and mentions certain health care providers, yet he does not set forth any allegations against Defendants Broome or King. Defendants state that Plaintiff requests that Defendants Broome and King be liable for the alleged delay in treatment based solely on their positions.

Plaintiff asserts that he received cuts and broken bones after he was attacked by inmate Lee, and he was examined by Dr. John Doe. Plaintiff asserts that he was treated with an ace bandage and Motrin but could not have an x-ray taken because the technician had gone for the day. Plaintiff contends that he was placed in segregation while in extreme pain and could not eat or sleep. Plaintiff also contends that he did not receive any treatment for his obviously broken finger for 30 days when Dr. Johnson treated him. Plaintiff avers that Defendants Broome and King interfered with prescribed treatment, and these two Defendants created or carried out a policy which resulted in violations of his constitutional rights.

Plaintiff's contentions against Defendants Broome and King amount to nothing more than a "threadbare recital" of the elements of a deliberate indifference to a serious medical need claim. Plaintiff's allegations against Defendants Broome and King are vague and conclusory, and his allegations do not reveal how Broome or King denied him medical treatment, interfered with necessary medical treatment, or caused a delay in the receipt of any necessary treatment. This portion of Defendants' Motion should be **granted** and Plaintiff's claims against Defendants Broome and King should be **dismissed**.

12

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion to Dismiss be **GRANTED** in part and **DENIED** in part. Plaintiff's monetary damages claims against Defendants in their official capacities should be **DISMISSED**. Plaintiff's claims against Defendants Kim Thomas, Braddy, Tammie Thomas, Paul, Broome, and King in their individual capacities should be **DISMISSED**. Plaintiff's individual capacity claims against Defendants Brewton and Williams should remain pending.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 27th day of September, 2011.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)