# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# STATESBORO DIVISION

CURTIS SPIRES,

    Plaintiff,

v.

JOHN PAUL; and OFFICER TAMMIE THOMAS,

    Defendants.

CIVIL ACTION NO.: 6:11-cv-45

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, who is currently incarcerated at the B.R. Correctional Facility in Columbia, South Carolina, filed a cause of action pursuant to 42 U.S.C. § 1983 to contest certain conditions of his confinement while he was housed at Georgia State Prison in Reidsville, Georgia. Defendants John Paul and Tammie Thomas ("Defendants") filed a Motion for Summary Judgment. (Doc. 134.) Plaintiff filed a Response, and Defendants filed a Reply. (Docs. 137, 139.) Plaintiff filed a Surreply. (Doc. 142.) For the reasons which follow, I **RECOMMEND** that the Court **GRANT** Defendants' Motion. I also **RECOMMEND** the Court **DISMISS** Plaintiff's Complaint, **CLOSE** this case, and **DENY** Plaintiff *in forma pauperis* status on appeal. In addition, Plaintiff has filed a Motion for Name Change, (doc. 141), and a Motion for Additional Discovery. (Doc. 143.) Plaintiff's Motions are **DISMISSED AS MOOT** and **DENIED**, respectively.

# BACKGROUND[1]

Plaintiff asserts that in July 2010, he was housed with another inmate, Deandra Lee ("Lee").[2] (Doc. 1, p. 7.) As a way to cope with the problems he asserts he was having with Lee, Plaintiff contends he purchased a small amount of marijuana from an unnamed correction officer. (Id. at p. 11.) Relevant to this Motion, Plaintiff states he was later given a disciplinary report for marijuana possession and was moved to an isolation cell on September 28, 2010. Plaintiff states Defendant Tammie Thomas, who escorted him to the isolation cell, asked him who sold him the marijuana, but Plaintiff refused to answer. According to Plaintiff, Defendant Thomas told Plaintiff to enjoy his stay in isolation with no water. (Id.) Plaintiff states he had no running water in his isolation cell and his repeated requests of other officers for running water were ignored.[3] (Id. at pp. 12–14.) He claims he was forced to drink toilet water for several days. Plaintiff asserts he notified Defendant Paul that he had no water. Plaintiff states that Defendant Paul told him that was too bad and that he should have thought of the consequences of being in isolation and that Plaintiff should tell the cell block officer that there was no water in his cell so a work order could be done. Plaintiff asserts he suffered from cramping, vomiting, diarrhea, and

---

[1] The recited allegations are taken from Plaintiff's Complaint and are viewed in the light most favorable to Plaintiff, the non-moving party.

[2] Plaintiff claims he told Defendant Brewton several times in August that he feared that Lee would harm him. Plaintiff asserts he was punched by Lee on August 12, 2010. Plaintiff states Defendant Kim Thomas saw Plaintiff's black eyes from the punches and was told by Defendant Kim Thomas to fight back. Plaintiff claims that on August 18, 2010, he told Defendants Kim Thomas and Braddy that Lee had been denying Plaintiff his meals and sexually and physically assaulting Plaintiff. Plaintiff states he was moved to protective custody later that day. Plaintiff's Complaint was originally served against these formerly-named Defendants on the basis of Plaintiff's failure to protect claims against them. (Doc. 10.) The Court offers these factual allegations here merely as background for the claims Plaintiff still has pending.

[3] Plaintiff states that Officer Robinson told him a work order would be placed on September 28, 2010. (Doc. 1, p. 12.) Plaintiff also states Officer McKinley gave him four cups of water on October 1, 2010. (Id. at p. 13.)

bloody stool from drinking his toilet water. (Id. at p. 14.) Plaintiff's Complaint was served upon Defendants based on Plaintiff's Eighth Amendment claims for deliberate indifference to his health. (Doc. 10.)

Defendants Paul and Thomas moved for the dismissal of Plaintiff's claims against them. (Doc. 28.) The Magistrate Judge recommended that these Defendants' Motion be granted and that Plaintiff's claims against Paul and Thomas should be dismissed for failure to state a claim. (Doc. 52, pp. 8–9.) The Honorable B. Avant Edenfield adopted this recommendation as the opinion of the Court. (Doc. 62.) In addition, former Defendants Larry Brewton and Doug Williams filed a motion for summary judgment, which was granted by Order dated November 19, 2012, and which dismissed Plaintiff's claims in their entirety. (Doc. 111.) Plaintiff then filed a notice of appeal. (Doc. 113.)

On appeal, the Eleventh Circuit Court of Appeals upheld this Court's dismissal of Plaintiff's claims against former Defendants Brewton and Williams. (Doc. 120, pp. 3, 8–12.) However, the Eleventh Circuit reversed this Court's dismissal of Defendants Paul and Thomas and remanded the case for further proceedings. (Id. at pp. 3, 12–18.) Defendants' instant Motion for Summary Judgment followed.

## DISCUSSION

Defendants assert they are entitled to summary judgment because Plaintiff cannot sustain his Eighth Amendment claims against them. In addition, Defendants maintain they are entitled to qualified immunity.[4] In moving for summary judgment, Defendants rely on their Statement of

---

[4] Defendants originally asserted that Plaintiff is entitled to recover no more than nominal damages, but he should not be allowed to recover at all because he suffered only de minimis injuries. (Doc. 134-1, pp. 12–15.) Defendants have revised this stance in light of the Eleventh Circuit's decision in Brooks v. Warden, 800 F.3d 1295 (11th Cir. 2015). (Doc. 147.) In Brooks, the Eleventh Circuit held "that nothing in [42

Material Facts, a copy of the transcript from Plaintiff's deposition, and several declarations sworn under penalty of perjury. In response, Plaintiff filed his own declaration and Statement of Material Facts.

As set forth below, the Court agrees that Plaintiff fails to establish a genuine dispute as to facts material to his claim, and Defendants' Motion is due to be granted as a result.

**I.  Standard of Review**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks

---

U.S.C.] § 19997e(e) prevents a prisoner from recovering *nominal* damages for a constitutional violation without a showing of physical injury." 800 F.3d at 1307–08 (emphasis in original).

evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., Fla., 630 F.3d 1346, 1353 (11th Cir. 2011).

## II. Plaintiff's Eighth Amendment Claim—Deliberate Indifference to Health

Defendants assert that Plaintiff had regular access to hydration because he was supposed to receive beverages served with meals, and ice was delivered to cells throughout the day. In addition, Defendants assert officers who patrolled the area near Plaintiff's cell provided him with water to drink. Defendants further assert they each took steps to alleviate the condition of Plaintiff's cell once they were made aware of the sink not working. Specifically, Defendant Thomas avers she informed the control officer of the condition of the sink in Plaintiff's cell so that a work order could be placed with maintenance. Defendant Paul avers the unit secretary informed him that a work order was pending when he asked about the sink. Defendants contend they were not capable of performing any necessary repairs themselves, yet they "expected the sink to be fixed quickly." (Doc. 134-1, p. 10.) Defendants maintain they knew Plaintiff had access to water by other means, and his claimed deprivation was not so severe to amount to an Eighth Amendment violation. (Id. at p. 9.)

Plaintiff avers he was sent to isolation for 21 days as punishment for possessing marijuana, and Defendant Thomas escorted him to the isolation cell. Plaintiff contends Defendant Thomas took away his property, including his drinking cup. (Doc. 137-1, p. 2.) Plaintiff also contends Defendant Thomas was interrogating him about the source for the

5

marijuana, yet he refused to provide the name. Because of his refusal, Plaintiff asserts, Defendant Thomas "lashed-out" at him by telling him, "Enjoy your stay without water." (Id.) Plaintiff alleges he saw Defendant Thomas at some unspecified later time, and he informed her he still had no water in his cell. Plaintiff contends he informed Defendant Paul during inspection that he did not have water in his cell, and Defendant Paul acknowledged this comment by saying, "Okay." (Id.) Plaintiff states he wrote a letter to Defendant Paul several days later pleading with him to provide drinking water and informed him that drinking out of the toilet was a lot to ask someone.[5] Plaintiff asserts Defendant Paul responded to this letter three days afterward by writing, "You have no water in your cell in which to drink from. . . should have thought of the consequences before you got caught with dope." (Doc. 137-2, p. 2.) Plaintiff also asserts Defendant Paul offered limited assistance by telling Plaintiff to talk to someone else at the prison.

Plaintiff's deliberate indifference to his health claims and Defendants' Motion require discussion of the Eighth Amendment's proscription against cruel and unusual punishment. The Eighth Amendment governs the conditions of a prisoner's confinement. Helling v. McKinney, 509 U.S. 25, 31 (1993). Generally, prison conditions rise to the level of an Eighth Amendment violation only when they "involve the wanton and unnecessary infliction of pain." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "To mount a challenge to a condition of confinement, a prisoner must first prove the condition he complains of is sufficiently serious to violate the Eighth Amendment." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004). "The

---

[5] Plaintiff insists he sets forth claims against Defendants given "the liberal pleading standard of Rule 8(a)(2), particularly the less stringent standard afforded to pro se litigants." (Doc, 137-2, p. 2.) Rule 8 of the Federal Rules of Civil Procedure is a pleading standard, and Plaintiff has satisfied that standard since his Complaint was served. However, the requirements at the summary judgment stage, even for pro se litigants, are much higher, as set forth in Section I of this Report.

challenged condition must be extreme;" at the very least, the prisoner must show the condition of his confinement "poses an unreasonable risk of serious damage to his future health or safety." Id. (quotations and alteration omitted). The prisoner must also show that prison officials acted with deliberate indifference to the condition at issue. Id.; Brown v. Pastrana, 446 F. App'x 270, 272 (11th Cir. 2011).

Although "[t]he Constitution does not mandate comfortable prisons," Farmer v. Brennan, 511 U.S. 825, 832 (1994), it does not allow a prisoner to be exposed to an objectively "unreasonable risk of serious damage to his future health." Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004) (quoting Helling, 509 U.S. at 35). Moreover, the conditions of confinement must meet "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102–03 (1976) (quoting Trop v. Dulles, 356 U.S. 86, 101 (1958) (internal quotation marks omitted)). To state a successful Eighth Amendment claim, a plaintiff must show: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) a causal connection between the defendants' conduct and the Eighth Amendment violation." Brooks v. Warden, 800 F.3d 1295, 1303 (11th Cir. 2015).

Whether a particular condition of confinement constitutes cruel and unusual punishment is an objective inquiry; whether prison officials were deliberately indifferent to that condition is a subjective inquiry. See Wilson v. Seiter, 501 U.S. 294, 298–99 (1991). Prison conditions amount to cruel and unusual punishment only when they result in "unquestioned and serious deprivation of basic human needs." Rhodes, 452 U.S. at 347. "While prison officials must furnish prisoners with adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of inmates, the Constitution does not mandate comfortable prisons[.]" Grimes v. Thomas, No. 2:12-CV-01909-LSC, 2014 WL 554700, at *5–6

(N.D. Ala. Feb. 12, 2014), *appeal dismissed* (Sept. 17, 2014) (internal citations and punctuation omitted). As the Eleventh Circuit Court of Appeals observed, "[t]he Constitution does not require that prisoners, as individuals or as a group, be provided with any and every amenity which some person may think is needed to avoid mental, physical, and emotional deterioration." Harris v. Thigpen, 941 F.2d 1495, 1511 (11th Cir. 1991). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes, 452 U.S. at 347. Therefore, extreme deprivations are required to make out a conditions-of-confinement claim under the Eighth Amendment. See Chandler, 379 F.3d at 1298. "To be deliberately indifferent, a prison official must knowingly or recklessly disregard an inmate's basic needs." LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993). To establish that an official was deliberately indifferent, "a plaintiff must prove that the official possessed knowledge both of the infirm conditions and of the means to cure that condition, 'so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.'" Id. at 1535 (quoting Duckworth v. Franzen, 780 F.2d 645, 653 (7th Cir. 1985)).

In support of their Motion, Defendants submitted their own declarations, as well as a declaration from Lynette Mobley, an administrative assistant and records custodian at Georgia State Prison. Defendant Thomas declares she escorted Plaintiff to his isolation cell on September 28, 2010, and she had no authority to assign Plaintiff to or remove Plaintiff from this cell. (Doc. 134-5, p. 1.) Defendant Thomas states that, upon arriving at this cell, Plaintiff informed her that the sink in the cell was not working properly. Defendant Thomas also states there is a water fountain right outside of Plaintiff's cell, and she gave him a cup of water.

8

Defendant Thomas declares she told the building control officer that the sink in Plaintiff's cell was not working so that a work order could be made. (Id. at p. 2.) Defendant Thomas asserts she does not recall seeing Plaintiff again while he was housed in isolation or that he told her he still had no water and had to drink from his toilet. (Id. at p. 3.) Defendant Thomas states she would not have believed Plaintiff if he had told her he was drinking from the toilet given the other means by which he could obtain water (discussed below) and the skill and responsiveness of the maintenance staff. (Id. at p. 3.)

Defendant Paul states he received a letter from Plaintiff in October 2010 in which he complained about not having running water in his isolation cell and having to drink out of the toilet. (Doc. 134-4, pp. 1–2.) Defendant Paul also states he contacted the unit secretary after receiving Plaintiff's letter, and she told him a work order had been put in for the sink to be repaired. (Id. at p. 2.) Defendant Paul avers he did not believe Plaintiff was drinking out of the toilet in light of the other means he could have obtained water. (Id. at p. 3.)

Both Defendants declare they are not plumbers and did not have the ability to repair the sink themselves. In addition, Defendants state that the maintenance staff at Georgia State Prison is very effective, and when a work order is placed, repairs are made promptly. (Doc. 134-4, p. 2; Doc. 134-5, p. 2.) Defendants maintain issues involving water "are taken particularly seriously, and thus, a repair is generally made on the same day a work order is put in" or the next day. (Doc. 134-4, p. 2; Doc. 134-5, p. 2.) Defendants state they did not think Plaintiff would have been without running water for a long period of time. In addition, Defendants note inmates at Georgia State Prison are served meals two to three meals a day, and beverages are served with every meal. Further, Defendants state inmates are given ice several times a day, which they either chew or allow to melt to have cold water to drink. Moreover, Defendants note that an

9

inmate can request a drink from a water fountain of the officers patrolling near his cell, and an officer will typically provide the inmate with water when requested. (Doc. 134-4, p. 3; Doc. 134-5, pp. 2–3.)

Ms. Mobley asserts inmates are served beverages with each meal. (Doc. 134-6. p. 2.) Attached to her declaration is a checklist for whether meals were given to Plaintiff while he was in isolation from September 28 to October 18, 2010. (Id. at pp. 4–6.)

During his deposition, Plaintiff testified that, once he told Defendant Thomas he did not have water in his cell, he asked her to call someone so he could get some water in his cell. (Doc. 134-3, p. 5.) In addition, Plaintiff stated he told Defendant Thomas approximately a week later that he was drinking from his toilet because he did not have any water, and she just stared at him. (Id. at p. 6.) Plaintiff also stated he wrote a letter to Defendant Paul on October 3, 2010, and pleaded with him for water. Plaintiff said Defendant Paul wrote back and told Plaintiff he should have thought of the consequences before he was caught with marijuana; however, Defendant Paul also told Plaintiff that he needed to contact the cell block officer so that a work order could be placed. (Id.) Further, Plaintiff testified that he informed Defendant Paul "a few days prior to the letter" during inspection that there was a problem with his sink. (Id.) In addition, Plaintiff stated he filed a grievance with the counselor, and the grievance went to Defendant Paul as the deputy warden of care and treatment. (Id. at p. 7.) Plaintiff testified that his sink was repaired on October 13, 2010, and during the two-week period he was without water in his cell, he drank out of the toilet "[q]uite a few times[,]" which he approximated to be "a dozen times." (Id.) Plaintiff also testified that at least three other officers brought him cups of water. (Id. at pp. 6, 7.)

Plaintiff states in his declaration that Defendant Thomas did not give him a cup of water on September 28, 2010, as she claims. (Doc. 137-6, p. 2.) In addition, Plaintiff declares Defendant Thomas did not inform the building control officer to put in a work order, nor did Defendant Paul put in a work order, because Plaintiff "asked for said document during discovery and one could not be produced." (Id. & at p. 3.) Plaintiff recognizes that meals were to be served with an eight ounce cup of tea. However, Plaintiff maintains that the tea was omitted from the meal sometimes due to "officers not picking it up, inmates server orderlies [sic] forgot it, and food service staff were too busy to remember to provide tea with each meal. Also, no matter if tea came with [the] meal the [Plaintiff] could not satisfy his thirst[ ], on (1) or (2) 8 oz. cups of tea per day." (Id. at p. 3.) While Plaintiff notes there was a fountain by his cell, he also states he could not get to the fountain to drink from it. Plaintiff declares he was forced to drink from the only water source in cell—the toilet—the same toilet [he] was throwing-up in—defecating in (with blood)." (Id.)

Viewing the evidence in the light most favorable to Plaintiff, he fails to establish a genuine dispute as to any fact material to his Eighth Amendment claims against Defendants. It is undisputed that Defendants were made aware of Plaintiff's contention that he did not have access to water in his cell and, in fact, he told each Defendant of this on at least two separate occasions. However, Plaintiff presents no evidence refuting Defendant Thomas' assertion that she informed the control booth officer about the condition of Plaintiff's cell so that a work order could be placed or Defendant Paul's assertion that he was informed a work order had been placed. The Court notes Plaintiff's averment that he asked for a copy of this purported work order during discovery, but a copy was not produced. Nevertheless, even accepting this as true, Plaintiff fails to create a genuine dispute regarding whether Defendant Thomas informed the control booth

officer of the problem with Plaintiff's cell or whether Defendant Paul was informed a work order had been placed. At best, Plaintiff's averment reveals that a work order had not been placed, despite each Defendant's belief to the contrary. Relatedly, although the Court notes Defendant Thomas may have told Plaintiff to enjoy his stay in isolation without water and that Defendant Paul was perhaps needlessly caustic in his written response to Plaintiff's letter, the undisputed facts before the Court reveal that Defendants acted in response to Plaintiff's complaints about having no water in a positive manner with an eye toward resolution. The evidence does not bear that Defendants did nothing in response to these complaints. Defendants both attested to their beliefs that the issue was being resolved based on their actions and their general experiences with the maintenance staff at Georgia State Prison. Furthermore, each Defendant has introduced evidence that they could not fix the problem with Plaintiff's sink themselves, and Plaintiff has failed to contradict these assertions. Accordingly, Plaintiff's claims that Defendants were deliberately indifferent to his health cannot survive Defendants' Motion, and the Court should grant summary judgment in favor of Defendants.

Moreover, the evidence before the Court reveals that Plaintiff had sources of hydration from other sources aside from the sink in his cell. By Plaintiff's own admission during his deposition, at least three officers other than Defendants provided him with water on several occasions. Plaintiff stated in his declaration that, even though a cup of tea was supposed to be served with each meal, sometimes the tea was forgotten. Viewing this statement in the light most favorable to Plaintiff, he meant that sometimes <u>he</u> did not have tea with his meal. However, according to the Isolation Checklist Mobley attached to her declaration, Plaintiff received at least two meals each day of his stay in isolation during the period he had no water in his sink, and he received three meals a day on nearly half of those days. (Doc. 134-6, pp. 4–6.)

Even if Plaintiff did not receive tea with every meal, he makes no contention that this happened often enough to have rendered him without a source of hydration other than his toilet. Additionally, Plaintiff presents no evidence that Defendants knew he sometimes did not receive a drink with his meal or otherwise refuting Defendants' beliefs that, even if Plaintiff did not have water in his cell from his sink, that he had other sources of hydration. Further, Plaintiff presents no evidence that Defendants knew of the alleged health problems from which Plaintiff suffered as a result of having to drink from his toilet.[6] In short, Plaintiff fails to establish a genuine dispute as to any fact material to his Eighth Amendment claims.

It is unnecessary to address the remaining grounds of Defendants' Motion.

### III. Motion to Change Name (Doc. 141)

Plaintiff requests that the Court change his name upon the caption and docket of this case from "Curtis Spires" to "Jim Cannup". According to Plaintiff, when he was arrested in 2000, Curtis Spires is the name the arresting officers gave him. Plaintiff asserts he has tried to correct his name to Jim Cannup, which is his birth name, to no avail. Plaintiff contends he has been transferred to the custody of the South Carolina Department of Corrections, which only recognizes his birth name.

Without more than what Plaintiff has provided the Court—which is only his Motion—Plaintiff's Motion is **DENIED** as moot. Plaintiff has not provided the Court with any evidence

---

[6] Even if the Court were to find Plaintiff successfully overcame his burden on the merits of his claims, Defendants likely would nonetheless be entitled to summary judgment on the basis of qualified immunity. See Hall v. Plumber Official, 446 F. App'x 184, 187 (11th Cir. 2011) (affirming district court's grant of summary judgment on qualified immunity grounds to a plumber at a correctional facility even though the plumber failed to repair the plaintiff's non-operational sink for thirty days when the plumber did not know of the plaintiff's alleged health problems and when the plaintiff was "known to have access to water and health care services."). The Court recognizes that this opinion from the Eleventh Circuit Court of Appeals is unpublished and is no more than persuasive authority. 11th Cir. R. 36-2. However, the Hall opinion offers compelling guidance in favor of the grant of qualified immunity.

that the name under which he was convicted should be changed to reflect what he contends is his birth name. See Coffey v. Daniels, 5:12-CV-384 (CAR), 2014 WL 1158874, *1, *8 (M.D. Ga. Mar. 21, 2014) (denying as moot the plaintiff's injunctive relief request that his name be changed upon the Georgia Department of Corrections' records because his name had been so changed already, which deprived the court of the ability to provide plaintiff with his requested relief).

## IV.     Motion for Additional Discovery (Doc. 143)

Plaintiff contends Defendants point to evidence in their Motion for Summary Judgment, such as a work order Defendants generated, but they did not produce this evidence. Plaintiff requests: camera footage of his time in isolation, which will show that Defendant Thomas did not give him a cup of water as she claims; a copy of the log book entry showing Defendant Thomas having informed the control officer in the booth of the need for maintenance in Plaintiff's cell; a declaration from the unnamed secretary who allegedly generated the work order; and video footage showing Defendant Thomas entering the control booth. Plaintiff asserts that, without the physical evidence to support their claims, Defendants are not entitled to summary judgment.

Defendants respond that Plaintiff's Motion was filed more than three months after the close of discovery, and Plaintiff has already served discovery upon them. However, Defendants state, Plaintiff never requested the evidence he now seeks. Defendants also state Plaintiff's Motion should be denied as a motion to compel discovery that was never requested. In addition, Defendants aver that they both thought a work order had been placed and, if one was not, fault lies with the control officer and the secretary.

Plaintiff counters that Defendants have only mentioned the existence of this evidence in their current Motion for Summary Judgment, despite the litigation in this case taking five years' time. Plaintiff asserts he "rejects this just-now-memory-lapse-to-save-us attempt to sway this

14

Court to think that after so many years gone by that Defendants can pull a rabbit out of a hat trick on this Court." (Doc. 146, p. 1.)

For the reasons set forth in Defendants' Response, Plaintiff's Motion is **DENIED**.

## V.     Leave to Appeal *In Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*.[7] Though Plaintiff has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. See Fed. R. App. R. 24(a)(1)(A) ("A party who was permitted to proceed *in forma pauperis* in the district-court action, . . ., may proceed on appeal *in forma pauperis* without further authorization, unless the district court—before or after the notice of appeal is filed—certifies that the appeal is not taken in good faith[.]"). An appeal cannot be taken *in forma pauperis* if the trial court certifies, either before or after the notice of appeal is filed, that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

---

[7] A Certificate of Appealability ("COA") is not required to file an appeal in a Section 1983 action. See Fed. R. App. P. 3 & 4; Morefield v. Smith, No. 607CV010, 2007 WL 1893677, at *1 (S.D. Ga. July 2, 2007) (citing Mathis v. Smith, No. 05-13123-A (11th Cir. Aug. 29, 2005) (unpublished)).

Based on the above analysis of Defendants' Motion for Summary Judgment, the Court should **DENY** Plaintiff's potential *in forma pauperis* status on appeal, as there are no non-frivolous issues to raise on appeal, and any appeal would not be taken in good faith.

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that the Court **GRANT** Defendants' Motion for Summary Judgment. (Doc. 134.) I also **RECOMMEND** the Court **DISMISS** Plaintiff's Complaint and **CLOSE** this case. I further **RECOMMEND** the Court **DENY** Plaintiff leave to appeal *in forma pauperis*.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final

judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 7th day of January, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA